19 N.J. Super. 32 (1952)
87 A.2d 562
STATE OF NEW JERSEY, PLAINTIFF,
v.
WILLIAM REID, DEFENDANT.
STATE OF NEW JERSEY, PLAINTIFF,
v.
EMMA NEWBY, DEFENDANT.
STATE OF NEW JERSEY, PLAINTIFF,
v.
VIOLET McGUIRE, DEFENDANT.
Superior Court of New Jersey, Essex County Court Law Division, Criminal.
Decided March 31, 1952.
*33 Mr. Richard J. Congleton, County Prosecutor (Mr. Joseph Hayden appearing), attorney for the State.
Mr. Joseph C. Cassini, attorney for William Reid.
Mr. David Silver, attorney for Emma Newby.
Mr. Michael N. Steinberg, attorney for Violet McGuire.
NAUGHRIGHT, J.C.C.
William Reid, Emma Newby and Violet McGuire were separately indicted by the Essex County Grand Jury for selling "certain alcoholic beverages * * * without having first obtained a license for that purpose from the Municipal Board of Alcoholic Beverage Control of the City of Orange," contrary to R.S. 33:1-50.
Defendants' motions to dismiss these indictments present the question of the legal sufficiency of their pleas of double *34 jeopardy. These pleas are the result of convictions of the three above named defendants in the Municipal Court of the City of Orange for selling alcoholic beverages without a license, in violation of section 16 of a city ordinance regulating the sale and distribution of such beverages.
It is the contention of defendants that by reason of their having been convicted of the offense for which they now stand indicted, in the municipal court on the self-same facts and circumstances, the present indictments place them in second jeopardy.
Their pleas of double jeopardy rest, of course, upon Art. I, par. 11 of the New Jersey Constitution (1947) and the somewhat broader common law doctrine that no one may be twice put in jeopardy for the same offense.
Reliance is placed by defendants, in support of their motions, upon the case of State v. Labato, 7 N.J. 137 (1951). In the Labato case defendant was convicted in the police court for a violation of the Disorderly Persons Act, R.S. 2:202-16, for possession of number slips pertaining to a lottery. Thereafter he was indicted under the Crimes Act, R.S. 2:147-3, for possession of these self-same number slips. The County Court held that defendant's prior conviction for violation of the Disorderly Persons Act upon complaint filed in the police court, based upon the identical facts, constituted prior jeopardy and dismissed the indictment. On appeal, the Supreme Court affirmed.
It should be observed that in the Labato case the same authority, namely, the State, sought to punish twice for the same unlawful act of possession of number slips  once through the Disorderly Persons Act and again through the Crimes Act. That the holding of the court was confined to the impropriety of such action is underscored by the following statement of the court, at page 145:
"`The same act may not be twice punished by the same sovereignty, merely because it violates two laws.' * * * It is not necessarily a second jeopardy for the same act that brings the maxim into operation, but rather a second jeopardy for the same offense."
*35 And again at page 150:
"This statute and the Crimes Act deal merely with different degrees of the same offense. The unlawful possession cannot be split into two separate and distinct offenses, cumulatively punishable."
It is thus quite obvious that the court in the Labato case was not faced with (and consequently did not purport to pass upon) the situation, represented by the case sub judice, of a conviction in a municipal court for violation of a municipal ordinance which prohibits an act which is also an offense under the general criminal laws of the State.
The question in the case at hand is not whether, as in the Labato case, the same authority may subdivide an offense and subject the offender to dual punishment, but whether the same act may constitute two separate and distinct offenses  one against the State and one against the municipal corporation  so that both may punish without violating any constitutional principle.
In Howe v. Treasurer of Plainfield, 37 N.J.L. 145 (Sup. Ct. 1874) this question was passed upon by the court. There, defendant was convicted in the Magistrate's Court of the City of Plainfield for violation of an ordinance of the city declaring that no person shall in any manner sell or dispose of spiritous liquors within the city limits unless licensed to do so by the common council.
By the charter of Plainfield the common council was given the exclusive right to regulate or prohibit the sale of spiritous liquors within the city. It was further provided in the charter that no person shall in any manner sell, etc., spiritous liquors unless licensed to do so by the common council.
From his conviction for violation of said ordinance defendant appealed to the Supreme Court. One of the questions presented by the appeal, among others, was whether the municipality could lawfully punish as an offense against its laws, an act which was an indictable offense by state law. On this point, the Supreme Court made the following significant remarks:
*36 "Judge Cooley, in his Treatise on Constitutional Limitations, p. 199, advances the doctrine that the same act may constitute an offence, both against the state and the municipal corporation, and that both may punish without violation of any constitutional principle; and I think he is abundantly supported, in principle as well as authority. * * * I do not think the test, as Judge Dillon, in his work on Municipal Corporations, 361, inclines to hold, is whether the act prohibited by ordinance is embraced in and made indictable by the criminal code of the state, but rather whether it may not be an act not only against the peace and dignity of the state, but also subversive of, or dangerous to the peace, good order, safety or health of the municipality. If the prohibited act may have this double aspect and prove injurious in its consequences to both jurisdictions, I do not see why it may not be prohibited and punished as well by municipal ordinance as by state law. The offence against the municipality is a different one from that against the state, though both offences proceed from the same act."
This principle of dual sovereignty, laid down in the Howe case, was followed in Hunter v. Teaneck Township, 128 N.J.L. 164 (Sup. Ct. 1942).
There the court said:
"Thus even if the same act (having and keeping a purposefully designed gambling device) may constitute an offense against the state, as claimed for prosecutors, and an offense against the township, we think that the act falls within that category which permits both the state and municipality to punish for the violation thereof without violation of any constitutional principle. Cf. Howe v. Treasurer of Plainfield, 37 N.J.L. 145."
Outside of New Jersey, the clear weight of authority is in line with our rule that where both an ordinance and a state statute prohibit certain acts, a conviction of an offense under either does not bar a prosecution under the other. The courts likewise proceed on the theory that while the same act may be a basis of each prosecution, yet the offenses are separate and distinct and committed against two different laws. See 15 Am. Jur., sec. 398; 22 C.J.S., sec. 296; 8 R.C.L. 150. See also Theisen v. McDavid, 34 Fla. 440, 16 So. 321 (Sup. Ct. 1894); Oats v. State, 2 So.2d 801 (Sup. Ct. Miss. 1941); State v. Tucker, 137 Wash. 162, 242 P. 363 (Sup. Ct. 1926), on rehearing, affirmed, 246 P. *37 758 (1926); Town of VanBuren v. Wells, 53 Ark. 368, 14 S.W. 38 (Sup. Ct. 1890); State v. Cavett, 171 Minn. 505, 214 N.W. 479 (Sup. Ct. 1927); Ex parte Sloan, 47 Nev. 109, 217 P. 233 (Sup. Ct. 1923); Chicago v. Union Ice Cream Mfg. Co., 252 Ill. 311, 96 N.E. 872 (Sup. Ct. 1911); Claypool v. McCauley, 131 Or. 371, 283 P. 751 (Sup. Ct. 1929); McInerney v. City of Denver, 29 P. 516 (Sup. Ct. Colo. 1892).
In Ex parte Sloan, supra, the court said that an ordinance penalizing the sale, manufacture, etc., of intoxicating beverages, also prohibited by statute, was not within the constitutional inhibition against double jeopardy because conditions ordinarily prevailing in populous cities constitute it a distinct offense against the municipality. To substantially the same effect is Chicago v. Union Ice Cream Mfg. Co., supra.
This view gives recognition to the fact that matters such as gaming or selling of intoxicating beverages "may in its broad social aspects be of state concern but in its particular complications or other aspects, varying with locality, also of peculiar municipal concern." See McQuillin, Municipal Corporations, sec. 23.01.
While the wisdom of a rule that permits a state to punish once directly and once through an agency or political subdivision of the state may be open to question, it should be pointed out that the courts proceed upon the theory that "within the contemplation of the constitutional inhibition against dual jeopardy for the same offense, our municipal governments are regarded as separate and distinct bodies politic from the government of the state; so that the same act may be a violation of, and consequently a crime against, the laws of both governments." See Theisen v. McDavid, supra.
The authority of the City of Orange to pass ordinances regulating the sale and distribution of alcoholic beverages and prohibiting the sale thereof without a license, has been conferred by the Alcoholic Beverage Law, R.S. 33:1-1 et seq., and more particularly R.S. 33:1-19, R.S. 33:1-24, and *38 R.S. 33:1-40. The fact that the State has made it a crime to sell alcoholic beverages without a license does not render the city ordinance void as repugnant or in conflict with the state law. The city has power to regulate the sale of alcoholic beverages notwithstanding. Orange v. Cercere, 132 N.J.L. 238 (Sup. Ct. 1944).
It has been established that the Legislature may constitutionally delegate to municipalities authority to make police regulations on the liquor traffic. See case of Riley v. Trenton, 51 N.J.L. 498 (Sup. Ct. 1889).
The defendants have not been placed in double jeopardy by their convictions in the municipal court under the city ordinance.
One of the defendants, William Reid, also contends that the indictment fails to state sufficient facts to constitute a crime against the State of New Jersey. This is wholly without merit.
The motions to dismiss the indictments are accordingly denied.